Frank Chapman, 5-1500
Frank Chapman Law Office
P.O. Box 1
Kelly Wyoming 83011
(307) 699 3159
frankchapman.law@gmail.com

Anna Reeves Olson, 6-3692
LONG REIMER WINEGAR, LLP
242 S. Park Street
Casper, Wyoming 82601
(307) 265-3843
(307) 235-0243 *facsimile*
aolson@lrw-law.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| SHAWNNA PUNTENEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. _____ |
| | ) | |
| UHS OF WYOMING, INC., d/b/a | ) | |
| WYOMING BEHAVIORAL INSTITUTE, and | ) | |
| DAVID MARTORANO, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

---

## COMPLAINT

The Plaintiff, Shawnna Punteney, by and through her attorneys, states as follows:

### THE PARTIES

1. Shawnna Punteney ("Ms. Punteney") is a resident of Natrona County, Wyoming and was a resident of Natrona County during all relevant times.

1

2. USH of Wyoming, INC., d/b/a Wyoming Behavioral Health ("WBI") is a mental health hospital providing services to patients in Natrona County.

3. Dr. David Martorano is a psychiatrist who is employed by WBI.

JURISDICTION & VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 because this litigation involves matters of federal law, namely, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5.

5.  Defendants are an employer within the meaning of Title VII.

6. The unlawful employment practices took place within the State of Wyoming, primarily Natrona County, Wyoming.

7. This Court has supplemental jurisdiction of the Plaintiff's state law claims pursuant to 42 U.S.C. § 1367.

8. This Court has jurisdiction pursuant to 42 U.S.C § 1988, Title IX and § 2000d *et seq*., to award attorneys' fees and other costs of representation to the Plaintiff.

9. Venue is proper in this District pursuant to 28 U.S.C § 139l(b)(2) because the events and omissions giving rise to the claim occurred in this District.

III. ADMINISTRATIVE PROCEDURES

10. Plaintiff filed a charge of discrimination with the Wyoming Fair Employment Program and Equal Employment Opportunity Commission on December 2, 2020 regarding the discriminatory conduct by Defendants.

11. On December 20, 2023, Plaintiff received from the U.S. Department of Justice a Notice of Right to Sue.  *See* Exhibit 1.

IV. FACTS

12. Plaintiff incorporates all of the previous paragraphs.

13. Plaintiff belongs to a protected group as she is a female.

14. Plaintiff is a highly-skilled licensed professional counselor and a nationally certified counselor.

15. Plaintiff was employed by WBI from January 2019 to November 2020.

16. WBI has a history or harassing female employees and treating them less favorably than male employees.

17. During her employment at UHS, Inc., Ms. Punteney was subjected to pervasive and unwelcome sexual harassment and the harassment was based upon the fact that she is a female.

18. The harassment affected a term, condition or privilege of her employment and was so pervasive as to alter the working conditions or her employment and created an abusive working environment.

19. One individual who subjected Ms. Punteney to unwanted and pervasive sexual harassment was Dr. David Martorano.

20. Dr. Martorano made it a practice to sexually harass and bully every female that he came into contact with, including Ms. Punteney. This sexual harassment consisted of but was not limited to:

    a.  Repeatedly offering private massages at his home;

    b.  Asking female staff to have private dinners with him or to have a meeting alone with him;

    c.  Making jokes about female bodies and their appearances;

    d.   Commenting on Ms. Punteney's breasts and make repeated and pervasive comments like "you have big boobs," "everyone stares at your boobs," and;

    e.   Making jokes about his genitals.

21. Dr. Martorano also scared Ms. Punteney because he would tell her that he had access to all of the records at Wyoming Medical Center and so he could hurt someone because he had access to all of these resources.

22. Dr. Martorano also talked about his sex life in front of staff and patients. For example, Dr. Martorano stated that he had an "open marriage," so he was free to have intercourse with whomever he wanted.

23. On another occasion, Ms. Punteney told Dr. Martorano that one female patient had a yeast infection and Dr. Martorano responded that "he always wanted to start a yogurt factory."

24. When Ms. Punteney tried to tell Dr. Martorano that his comments were inappropriate, Dr. Martorano became hostile toward her, he yelled at her, and was dismissive of her comments or ideas.

25. On other occasions, Dr. Martorano would tell Ms. Punteney to just be "a good girl and do as she was told," he would "punish" her when she was "bad," and that Ms. Punteney "should fear him." He also stated that if and when Ms. Punteney was good "he would reward her."

26. Dr. Martorano also asked patients about their sex life. For example, Dr. Martorano asked female patients how many times per week did their partners make them orgasm. The female patients felt compelled to respond because they thought it was necessary for their treatment and/or a diagnosis.

27. The sexual harassment and unwanted comments from Dr. Martorano were so pervasive and severe that Ms. Punteney could not be in a room with him, which made it difficult and impossible for her to do her job properly.

28. Dr. Martorano would boast that he ran WBI and could do whatever he wanted and treated women as though they were stupid, beneath him, and he could objectify them, which again, made it impossible for Ms. Punteney to do her job.

29. Dr. Martorano's assistant Renee Hoffard was just as bad as Dr. Martorano. For example, when Ms. Punteney was trying to discuss a patient with Dr. Martorano, Ms. Hoffard stated "patients either want to F____ you or kill you." Dr. Martorano agreed with Ms. Hoffard.

30. Also, during her term of employment:

   a. In March of 2019 In large part because of her complaints about Martorano, Plaintiff was warned by co-employee Amanda Sulze that she needed to "watch her back."

   b. In the fall of 2020, she was told by co-employee Steve Welsh following her complaint to UHS and WBI's Human Resources department that her name was written on truck stop walls and "for a good time" to call her.

   c. She was called degrading names by her colleagues based on her sex after complaining to the UHS and WBI Human Resources.

   d. In the fall of 2020, she was called a "skank" by co-employee Bonnie Brummond after complaining to the Human Resources about Martorano.

   e. Co-employee Welsh acted out sexually as Plaintiff placed a required mask on him due to covid safety requirements.

      f.  On August 17th 2020, Ms. Punteney sniffed, with a mask on, and Dr. Martorano told her she was "gross" and she needed to get hand sanitizer. This was during treatment team. All members of the treatment team were present.

      g.  On October 16, 2020, in a staff meeting Dr. Martorano told Ms. Punteney not to touch anything and that she needed to wipe everything down, even though Ms. Punteney had doctor's clearance to come back to work and was not contagious.

      h.  On October 29, 2020, Ms. Punteney met with Zach Bird and Wes Bertagnole to discuss WBI's call-in policy. Ms. Punteney had called out of work in October 2020 due to her illness and a family member's illness. However, Ms. Punteney used her Paid Time Off that she had accrued. In that meeting, Mr. Bird tried to intimidate Ms. Punteney when he stated that if he were to go off the call-in policy and Ms. Punteney's alleged non-adherence to the same, Ms. Punteney would be "probably possibly terminated." Ms. Punteney had always followed the procedure she knew to be in place for calling in. She had never been told otherwise. Interestingly, it was stated that Ms. Punteney started having trouble with the call-in policy "a couple of weeks ago," which was at the same time Ms. Punteney lodged her second complaint with HR. During this meeting, Mr. Bird didn't even know which days Ms. Punteney had called in.

          i.  Ms. Punteney's illnesses often resulted from the stress she faced at work. She had gone to the doctor multiple times while employed at WBI.

31. All of these actions affected a term, condition or privilege or employment and it was so pervasive as to alter the working conditions of employment and created an abusive working environment.

32. On or about June 12, 2020, Ms. Punteney complaint to UHS, Inc.'s Human Resources department about Dr. Martorano because he singled her out, disparaged other staff members and made inappropriate comments and sexual references during her employment.

33. The Human Resources department purportedly conducted an investigation and it was found that Dr. Martorano was condescending toward members of the clinical staff team, that he singled them out in group meetings for criticism, and he made off-color comments, some of which were direct, and some of which had a double meaning, and that Dr. Martorano's medical assistant had too much authority over the treatment team.

34. A meeting was held with the Director of Human Resources, CEO and Dr. Martorano, to discuss the findings.

35. The CEO instructed Dr. Martorano to stop making any off-color humor and to stick to the clinical diagnostic comments.

36. The CEO also informed Dr. Martorano that he should not retaliate in any way as it would not be tolerated.

37. After Ms. Punteney's complaint to HR she suffered adverse action by Defendant subsequent to or contemporaneous with her protected activity.

38. For example, after Ms. Punteney's complaint to HR the harassment worsened and she continued to be called degrading names by Dr. Martorano and again was told that Ms. Punteney should "fear him."

39. Dr. Martorano also made comments to others in front of Ms. Punteney that everyone needed to be careful around Ms. Punteney or "we will end up in human resources."

40. Ms. Punteney resigned on November 1, 2020 due to the harassment.

## V. First claim for Relief against all defendants: Title VII Sex Discrimination

41. Plaintiff incorporates all of the previous paragraphs.

42. Defendants subjected Plaintiff to adverse employment actions by treating her less favorably than other male employees because Plaintiff's gender was a motivating factor in the disparate treatment and constructive discharge.

43. Defendants knowingly and/or intentionally created a hostile work environment for Plaintiff because of her gender that was so intolerable that a reasonable person would have felt compelled to resign.

44. Plaintiff submitted her notice of resignation because of these intolerable working conditions, which constituted constructive discharge by Defendants.

45. Plaintiff has suffered humiliation, embarrassment, and loss of enjoyment of life because of Defendants' unlawful actions.

## VI. Second Claim for Relief against all defendants: Hostile Work Environment Based on Sex

46. Plaintiff incorporates all previous paragraphs.

47. Plaintiff was subjected to unwelcome and unwanted harassment by her employer because of her gender.

48. She was threatened, insulted, humiliated, treated differently, and subjected to critical and invasive comments about her gender and personal life.

49. The harassment was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and Plaintiff in fact did perceive it to be so.

50. The harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.

51. Defendants knew of the harassment and participated in the abusive behavior.

52. Plaintiff has incurred medical bills for treatment due to Defendants' unlawful actions. She further suffered humiliation, embarrassment, and loss of enjoyment of life because of Defendants' unlawful actions.

## VII. THIRD CLAIM FOR RELIEF, AGAINST ALL DEFENDANTS: RETALIATION, FOR ENGAGING AND PROTECTED ACTIVITY

53. Plaintiff incorporates all previous paragraphs.

54. Plaintiff participated in protected activity by complaining to WBI's human resources department, as required by her employee manual and in accordance with the policy of her employer, about the above-described behaviors and actions of Martorano and others.

55. Following her complaints to human resources, the plaintiff was the subject of derision, intimidation, hostile comment and behaviors, attempts to interfere with her new employment, and called various derogatory names, because of those complaints.

   a.  In public areas and in front of other employees, comments were made that other employees should not make jokes in front of plaintiff or they would wind up in human resources.

   b.  Her clinical supervisors, Amy Brus and Wes Bertagnole, both informed plaintiff, after her complaints to human resources, that "that's just the way it was" and she needed to put her head down and do her job and decide if this was the place for her.

   c.  Co-employee Zach Bird also informed plaintiff that she needed to just "put up" with Martorano, and that Martorano had made fun of his religion, so she needed to just "grow thick skin."

d.   Co-employee Suzanne Ridley shared plaintiff's private health information with the entire treatment team.

e.   Co-employee Robert LKU began calling plaintiff "miss know it all."

f.   After she left the employment of the defendants, WBI attempted to interfere with her employment when defendants informed plaintiff's new employer, that as long as plaintiff worked there, they would not refer patients.

g.   In an attempt to harass and intimidate plaintiff, Renee Hoffard made derisive comments about the plaintiff to Ms. Hoffard's son, which resulted in Ms. Hoffard's son taking nude locker-room photographs of Plaintiff's son.

## VIII. FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT MARTORANO; INTENTIONAL INFLICTION OF EMOTIONAL HARM.

56. Plaintiff incorporates all previous paragraphs.

57. The above-described behaviors, and other acts by Martorano, were extreme and outrageous conduct, intentionally or recklessly causing severe emotional distress, inflicting damages upon Plaintiff.

58. Defendant Martorano acted intentionally or recklessly causing the plaintiff severe emotional harm.

59. Defendant Martorano is a trained psychiatrist and mentally manipulates people by training education and experience.

60. Martorano's intentional, sexually charged behavior, directed toward the plaintiff and others in her presence, was outrageous and extreme to a degree beyond all possible bounds of decency, and both atrocious and utterly intolerable in a civilized community.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff prays for judgment against Defendant for compensatory and punitive damages as set forth above, for her attorney fees and costs of action and for such other and further relief as deemed appropriate after a trial to a jury on all claims.

1. Judgment against Defendants for her medical bills.

2. Judgment against Defendants for all compensatory damages suffered by Plaintiff because of Defendants' unlawful conduct;

3. Judgment against Defendants for general damages suffered by Plaintiff for the humiliation, embarrassment, emotional distress, loss of enjoyment of life, (past present and future), and other damages caused by Defendants' unlawful, retaliatory and intentional conduct;

4. Judgment against Defendants for punitive damages suffered by Plaintiff for the humiliation, embarrassment, loss of enjoyment of life, emotional distress, and other damages caused by Defendants' unlawful, retaliatory and intentional conduct.

5. Judgment against Defendant Martorano for general damages and punitive damages for the intentional infliction of emotional harm upon plaintiff.

6. Judgment against Defendants for Plaintiffs' litigation expenses, including reasonable attorneys' fees and costs, pursuant to the Title VII, and/or 42 U.S.C. § 1988; and

7. All other relief the Court deems just and proper.

Dated this 29th day of February 2024.

/s *Anna Reeves Olson*
Anna Reeves Olson, 6-3692
LONG REIMER WINEGAR, LLP
242 S. Park Street
Casper, Wyoming 82601
(307) 265-3843
(307) 235-0243 *facsimile*
aolson@lrw-law.com

/s *Frank Chapman*
F.R. Chapman, 5-1500
Frank Chapman law office
P.O. Box 1
Kelly Wyoming 83011
(307) 699 3159
frankchapman.law@gmail.com

*Attorneys for Plaintiff*